R B. PEEBLES v. WILLIAM TAYLOR, et. al.

*Action to Recover Land—Sale of Land for Taxes—Authority of Sheriff to Enforce Lien for Taxes—Tax List—Sheriff's Deed for Taxes—Listing and Assessment of Property for Taxation —Presumption.*

1. The only authority given to a Sheriff or Tax-Collector to enforce the lien on land for taxes is the tax-list with the order of the Clerk to the Sheriff to collect, endorsed thereon. The tax-collector can sell

or distrain for taxes due only in cases where the property actually appears on the tax-lists and has been duly assessed.

2. Where real estate was not listed for taxation, an order given the tax-collector by the County Commissioners to list it and collect the same amounts as in former years invested him with no authority under the Act to proceed to a sale; nor was he empowered to collect by sale or compulsion by an order of the Board of Commissioners allowing a party without title to list the land.

3. Evidence that land sold for taxes had never been listed or assessed rebuts the presumption raised by Section 72 of the Act of 1889 that a Sheriff's deed shows a proper listing and assessment.

CIVIL ACTION for the recovery of land tried on the usual issues in ejectment before *Bryan, J.*, and a Jury at August Term, 1897, of NORTHAMPTON Superior Court. The plaintiff claimed title to the land described by virtue of a sale for taxes by J. H. Whitehead, tax collector for Seaboard township, in May, 1891, for taxes alleged to be due thereon for the year 1890, by Etheridge & Brooks, and introduced the tax-collector's deed dated October 5, 1892, which was admitted under objection.

The defendants offered deed from Etheridge & Brooks to J. T. Griffin and others, trustees, dated October 25, 1889; then a deed from J. T. Griffin and others, trustees, to R. C. Marshall, trustee, for himself and others, dated September 6, 1890, and filed for registration, and registered on the 13th of April, 1894, thirty-one days after this action was commenced. It was admitted that both of said deeds covered the *locus in quo.* The defendants then introduced J. N. Whitehead as a witness (who it was admitted was elected tax-collector for Seaboard township in said county of Northampton in September, 1890, for the collection of the taxes for 1890; that his successor was elected in September, 1891, Whitehead retaining the tax-list for 1890, and the list for 1891 being given to his successor), and he testified that he sold the *locus in quo* in May, 1891, to R. B. Peebles, by

virtue of the old tax-list of 1890; that he reported the land as unlisted to the Board of County Commissioners for said county in December, 1890, or January, 1891; that he wrote to Etheridge & Brooks several times for the taxes, but got no reply; that tax-collector for 1891 was appointed in September 1891; that the land was not on the tax-list for 1890 given to him by the Clerk of the Board of County Commissioners; that the said clerk gave him a copy of the original list; that there was no written order endorsed thereon by said clerk to collect the within taxes, etc.; that he did not list the land; that it was not listed by any one that he knew of; that the Board of County Commissioners instructed him to make a tax receipt against the land, or list it (he did not know which), and collect the tax; that upon reflection he thought they told him to list it; that he put it on his receipt book in words and figures as follows:

"May 4, 1891.   Etheridge & Brooks, State Tax  . $  8  10
                                  "County Tax  .     5  23
                                                   ─────────
                                  "Total . . . .  $13  33"

The dates on my receipt book refer to the sale or payment; that the Board of County Commissioners told him to collect same amounts of tax that he had collected for preceding years; that the land in question is the only land Etheridge & Brooks ever owned in Seaboard township.

The record of the Board of Commissioners for said county was shown the witness, and his attention was called to an entry made in said record at the January meeting, 1891, in these words and figures to-wit: "It is ordered by the Board that Mrs. Fannie A. Boone be allowed to list 195 acres of land, valued at $1,000; also that Etheridge & Brooks be allowed to list 350 acres of land, valued at $2,000; all in Sea-

board township," and he said that the 350-acre tract men-
tioned in said order was the same land that is in contro-
versy.

Witness said:

"I advertised the land for sale by instructions of the Board
of Commissioners.

"I wrote to Etheridge & Brooks two or three times before,
and once after advertising, and got no answer.

"The land was listed in the name of Etheridge & Brooks
for the year 1888 as the 'Garris land', 350 acres, valued at
$2,000. In 1889 it was on the delinquent list, in the name
of Etheridge & Brooks, and some one, I think it was J. A.
Pruden, went before the Board of Commissioners and got
the land relieved of a double tax, and I collected a single
tax."

The only order for the collection of this tax was the ver-
bal order given to J. H. Whitehead, as testified to by him,
and the order of the records of the Board of Commissioners,
made at their January meeting, 1891.

Witness further testified that neither name of Etheridge
& Brooks, or Marshall, was on the tax-list when delivered to
to him, or was ever actually put on it by any one.

The defendant R. C. Marshall was introduced as a wit-
ness, and was asked to state what interest he had in this
land individually and as trustee. Plaintiff objected; objec-
tion was sustained, and defendants excepted.

The said Marshall then testified that he paid the taxes
assessed for the years 1891, 1892, 1893, 1894, 1895 and
1896, and that he had been in possession of said land since
1890.

During the trial said Marshall in open court paid to the
County Treasurer the amount of taxes for which the land
was sold—$13.53.

121—6

The defendant asked the Court to instruct the jury to answer issues first and second "No." This the Court refused to do, and the defendant excepted. Thereupon the Court instructed the jury, if they believed the evidence, to answer the first and second issues "Yes." Defendants excepted.

There was a verdict for plaintiff, and from the judgment thereon the defendants appealed.

*Mr. R. O. Burton,* for plaintiff.
*Messrs. MacRae & Day,* for defendants (appellants).

MONTGOMERY, J. This is an action for the possession of a tract of land, the plaintiff claiming title under a certain deed executed to him on the 4th of May, 1891, by the tax-collector of Seaboard township. The sale under which the deed was made was for taxes alleged to have been assessed and due upon the land for the year 1890.

When the first appeal was heard by this court at its February term, 1896, the only question presented for our decision was, whether a sheriff's or a tax-collector's deed made under sale of land for taxes where the land was listed in the name of a person not its owner, was *prima facie* evidence of title. As the case was then constituted it appeared that the property had been actually listed on the tax list in the names of Etheridge & Brooks, persons not the owners. On the first trial His Honor held that the tax collector's deed passed no title to the purchaser and the jury were instructed to answer the issue as to whether the plaintiff was the owner of the land and entitled to possession "No". This was held to be error, and the case was sent back for a new trial.

After the decision of the court the answer was amended: and it was then averred by the defendants that the tract of land described in the complaint had never been listed for taxation in 1890, and that at the time the sale was made the

tax list did not contain the land nor show that it had been
listed either by these defendants or any other person.   On
the last trial it appeared from the testimony of the officer
who made the sale, that the copy of the tax list for 1890
given to him by the clerk of the Board of County Commis-
sioners—and under which he proceeded to make the sale—
did not contain the tract of land, and that it was not listed
for taxation on the tax list by any person in that year.   It
was admitted in the argument here by plaintiff's counsel
that the tract of land was not actually listed for taxation on
the lists of 1890; but it was insisted that the officer, never-
theless, was empowered to sell the land by virtue of an in-
struction given him by the commissioners to list it and to
collect same amounts which he had collected in preceding
years; and also by virtue of an order made by the County
Commissioners, at their January meeting 1891, which is in
the following words:   "It is ordered by the Board that Mrs.
. . . . . . . . be allowed to list 195 acres of land valued at
$1,000; also that Etheridge & Brooks be allowed to list 350
acres of land valued at $2,000."   It was also argued here
that the tax-collector was authorized and empowered to
make the sale of the land, even though it had not been
listed, under the provisions of Section 33 of the Act which
declares "That the taxes assessed on real property shall be
a lien thereon from and including the 1st day of June in
the year in which they are levied until the same are paid."

    The last position is clearly untenable.   The lien created
by Section 33 of the Act must be enforced according to law;
and no where is the tax-collector authorized to enforce the
lien of his own motion.   The authority of the sheriff or
tax-collector to collect the taxes is given to him in a precise
and particular manner in Section 32 of the Act in the fol-
owing words:   "The Clerk shall endorse on the copies (of
the tax lists) given to the sheriff an order to collect the taxes

therein mentioned, and such order shall have the force and effect of a judgment and execution against the property of the person charged in such list." It is then the tax list with the Order of the Clerk to the sheriff to collect endorsed thereon which is the sheriff's authority to collect by distraint or otherwise. *State* v. *McIntosh*, 31 N. C., 307; *State* v. *Woodside*, 30 N. C., 104. If it should be conceded (which we do not) that since the decisions in the last named cases the law has been changed so as to raise a presumption that the clerk had done his duty and had endorsed on the tax list the order for collection when he delivered the list to the sheriff, yet still the lists themselves, must be in the hands of the sheriff, before he can collect the taxes by compulsion or sale.

His Honor, when he instructed the jury to find the issues "Yes", if they believed the testimony, must have had reference to the testimony of the tax-collector himself in reference to the verbal instructions which he had received from the commissioners, and to the order of the commissioners at their January meeting 1891 in which Etheridge and Brooks were allowed to list the land. His Honor must have considered these facts, if believed by the jury, to constitute in law, a listing and assessment of the property. In this there was error. It is true that under Section 72 of the Act, deeds made by the sheriff in cases of the sale of land for taxes are presumptive evidence, in suits in relation to the purchases at such sales, that the property had been listed and assessed; but we do not wish to make any ruling by inference of law in the construction of this statute. We take these words "listed and assessed" in their natural sense and meaning: that is, that they require the property sold to actually appear on the tax list, and that the taxes shall be assessed upon such listing by the competent legal authorities. The tax collector can sell or distrain for taxes due only in

cases where the property actually appears on the tax list and has been duly assessed.

In this very case it is almost certain that there was a mistake about the entry permitting Etheridge & Brooks to list the property; for they did not list it, and it appears from the proof that they had conveyed the same by deed of October 25th, 1889, to Griffin, Olds & Jenkins. But this is an immaterial point, and is only meant to point out the danger in the way if the court should receive such entries and such testimony as any evidence whatever of the actual listing and assessment of the property. His Honor should have instructed the iury that if they believed the testimony they should find the issues, "1. Is plaintiff the owner of the land described in the complaint?" No; and "2. Do defendants unlawfully detain said land from plaintiff?" No, for if the evidence was true the property had not been listed and assessed, and that the presumption in favor of the deed had been rebutted. The defendants had already introduced competent testimony going to show that, at the time of the sale, the title to the property was either in themselves or in Griffin, Olds & Jenkins under whom they claim by deed made September 6th, 1890, and registered on the 1st day of April, 1894, a few days after the commencement of this suit; that all the taxes accruing since the sale had been paid by the defendants and that those for the year 1890 (which the defendants paid during the trial to the County Treasurer) the defendants had theretofore, in 1891, offered to pay to the plaintiff with all costs and the interest required by law in such cases, which the plaintiff refused to receive.

Error.